IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONWIDE INSURANCE | : | |
| COMPANY, | : | CIVIL NO.  4:CV-04cv2154 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Jones) |
| v. | : | |
| | : | |
| SHARON CHIAO and | : | |
| CHARLES P. CHIAO, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM AND ORDER**

**July 1, 2005**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court are cross-motions for Summary Judgment filed by Plaintiff Nationwide Insurance Company ("Nationwide" or "Plaintiff") and by Defendants Sharon and Charles P. Chiao ("Defendants").  (Rec. Docs. 10 and 13). Following briefing by the parties, we held oral argument on the Motions on May 13, 2005.  The Motions are now ripe for our review.  Diversity jurisdiction in this Court is proper pursuant to 42 U.S.C. § 1332.

For the following reasons, we will grant the Defendants' Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

**STANDARD OF REVIEW:**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed .R. Civ. P.  56(c); <u>see</u> <u>also</u> <u>Turner v. Schering-Plough Corp.</u>, 901 F.2d 335, 340 (3d Cir. 1990).  The party moving for summary judgment bears the burden of showing "there is no genuine issue for trial."  <u>Young v. Quinlan</u>, 960 F.2d 351, 357 (3d Cir. 1992).  Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences which a fact finder could draw from them.  <u>Peterson v. Lehigh Valley Dist. Council</u>, 676 F.2d 81, 84 (3d Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact.  <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 323 (1986).  This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial.  <u>Id.</u> at 325.

Federal Rule of Civil Procedure 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).  The United States Supreme

Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor.  <u>Celotex Corp.</u>, 477 U.S. at 322-23.

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact."  <u>Pastore v. Bell Tel. Co. of Pa.</u>, 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted).  However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992), <u>cert. denied</u>, 507 U.S. 912 (1993) (citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)(emphasis in original).  "As to materiality, the substantive law will identify which facts are material." <u>Id.</u> at 248. A dispute is considered to be genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Id.</u>

**STATEMENT OF MATERIAL FACTS:**

The facts of this case are, in the main, undisputed.[1]  On December 8, 1998

Defendant Sharon Chiao was a passenger in a 1990 Plymouth Voyager owned and

operated by Chiao's coworker Janet K. Wilkinson ("Wilkinson") that was involved

in a serious accident.  At the time of the accident the two women were both

employees of the Pennsylvania State University and were returning from Reading,

Pennsylvania to their homes in Schuylkill County, Pennsylvania where they had

traveled for an employer-sponsored meeting.

The incident occurred when Wilkinson's attention to the road temporarily

lapsed as she put out her cigarette.  When Wilkinson's attention refocused on the

road, she saw a vehicle stopped for a school bus immediately in front of her

minivan.  In an attempt to avoid a collision with the stopped vehicle, Wilkinson

swerved to the right towards an embankment.  The vehicle hit the embankment and

flipped over.  Passenger Sharon Chiao suffered significant and life-altering

personal injuries.

Following the incident, the Chiaos asserted a claim against Wilkinson, who

was insured by the Progressive Insurance Company.  In settlement of the Chiaos'

claim, Progressive paid her the entire $15,000 value of Wilkinson's policy.  In

---

[1] The parties have stipulated to the relevant facts.  (See Stipulated Facts, Rec. Doc. 19).

addition, Sharon Chiao's employer has paid her workers' compensation benefits

pursuant to the Pennsylvania Workmen's Compensation Act, codified at 77 Pa.

Cons. Stat. § 1 et seq. ("WCA").

At the time of the incident, Chiao was herself insured by the Defendant.  In

addition to a standard automobile insurance policy, Chiao had purchased an

underinsured motorist ("UIM") insurance policy (the "UIM Policy") from the

Plaintiff, an optional coverage in Pennsylvania, against which Chiao has now

asserted a claim as a result of the accident.  Nationwide filed this action seeking a

declaratory judgment that it need not pay Chiao for her injuries because she is not

"due [payment] by law" as per the terms of the UIM Policy.  (Cmplt. ¶ 13, Rec.

Doc. 1).  The UIM Policy is governed by the Pennsylvania Motor Vehicle

Financial Responsibility Law, codified at 75 Pa. Cons. Stat. § 1701 et seq.

("MVFRL").

## DISCUSSION:

The question before the Court is a succinct and unresolved question of

Pennsylvania law:  whether an automobile insurer must provide coverage to an

insured who has purchased supplemental UIM insurance when the insured was

injured solely by a co-employee's negligence.[2]

### A.    Choice of Law

When a federal district court is presented with an unresolved question of state law, it must resolve the question by predicting how the state's supreme court would decide the issue.  See Travelers Indem. Co. v. DiBartolo, 131 F.3d 343, 348 (3d Cir. 1997).  We apply Pennsylvania law to this action, because Pennsylvania's choice of law rules provide that courts apply the insurance laws of the state in which the policy was delivered.  See Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999).  It is undisputed that the Policy was delivered to the Chiaos at their home in Pennsylvania, and therefore we shall apply the Commonwealth's statutory and common law to this case.  Furthermore, we apply Pennsylvania law as it stood on December 8, 1998, the date of Sharon Chiao's accident.  See Gokalp v. Pennsylvania Mfrs.' Assoc. Ins. Co., 719 A.2d 1033 (Pa. 1998).

### B.    The Applicable Statutory Sections

Pennsylvania courts have long debated the intersection of workers' compensation and automobile insurance laws, and a review of the relevant case law

---

[2] We here observe that this opinion does not foreclose the ability of an insurer to include a specific enumerated exclusion within an automobile policy limiting an insured's ability to recover both UIM and workers' compensation benefits.  As will be noted herein, the UIM Policy contained no such exclusion.

and statutes is necessary to the resolution of the parties' Motions.

Under Pennsylvania's MVFRL law:

> Underinsured motorist coverage shall provide protections for persons
> who suffer injury arising out of the maintenance or use of a motor
> vehicle and are **legally entitled to recover** damages therefore from
> owners or operators of underinsured motor vehicles ... .

75 Pa. Cons. Stat. § 1731(c)(emphasis added).[3]  Section 1731 also makes

underinsured motorist insurance coverage optional for drivers in Pennsylvania.[4]

The parties differ in their interpretation of how we are to read "legally entitled to

recover" in light of the following provisions of the WCA.

First, the WCA creates an exclusivity provision for employers:

> The liability of an employer under this Act shall be **exclusive and in**
> **place of any and all other liability** to such employee, his legal
> representative, husband or wife, parents, dependents, next of kin or
> anyone else otherwise entitled to damages in any action at law or
> otherwise on account of an injury or death ....

---

[3] As UIM insurance is optional, Pennsylvania requires those drivers who do not elect this
additional coverage to sign a waiver that states:

> By signing this waiver I am rejecting the underinsured motorist coverage under
> this policy, for myself and all relatives residing in my household.  Underinsured
> coverage protects me and relatives living in my household for losses and damages
> suffered **if injury is caused by the negligence of a driver who does not have**
> **enough insurance** to pay for all losses and damages.

Id.  (Emphasis added).  This waiver does not contemplate coverage exclusions for periods during
which an insured is working.

[4] Underinsured motorist insurance was mandatory in Pennsylvania until the MVFRL was
amended in 1991. See Borgia v. Prudential Ins. Co., 750 A.2d 843, 847-48 n.6 (Pa. 2000).

7

77 Pa. Cons. Stat. § 481(a)(emphasis added)(the "exclusivity provision").  This

exclusivity has been extended to co-employees:

> If disability or death is compensable under this action, a person shall
> not be liable to anyone at common law or otherwise on account of
> such disability or death for any act or omission occurring while such
> person was in the same employ as the person disabled or killed, except
> for intentional wrong.

Id. § 72 (the exclusivity provision)(the "co-employee immunity provision").  Thus,

both employers and co-employees are themselves immune from suit when an

employee is harmed in an accident.  As previously noted, the dispute before us lies

at the intersection of these two WCA provisions and the rights of an insured under

the MVFRL.

Pennsylvania requires two insurance policies to be in existence for an

insured to receive coverage from his or her underinsured motorists policy.  See

Wolgemuth v. Harleysville Mut. Ins. Co., 535 A.2d 1145, 1149 (Pa. Super. Ct.

1988)("The language of the [MVFRL] statute itself suggests that underinsurance

motorist coverage requires the existence of at least two applicable policies of motor

vehicle insurance."); see also 75 Pa. Cons. Stat. § 1731.  Here, obviously the

Chiaos' own UIM Policy is in play.  We must now determine whether Wilkinson's

auto insurance policy is also implicated in the dispute.

As previously noted, Progressive, Wilkinson's insurance carrier, settled with

8

the Chiaos for $15,000, the coverage limit on Wilkinson's insurance policy.  The

Defendants argue that Nationwide should be estopped from arguing that the policy

applies due to Progressive having settled with the Chiaos.  Nationwide contends

that this is an irrelevant consideration because Progressive was immune from suit,

and we should not speculate as to its motives in deciding to settle with the Chiaos.

However, for purposes of the <u>Wolgemuth</u> requirement of two policies, we need not

resolve that dispute, and find simply that the presence of Wilkinson's policy alone

is sufficient.  In <u>Nationwide Ins. Co. v. Cosenza</u>, the court said "there are two

policies at play – the liability policy of [the individual who caused the accident]

and the liability policy of the [plaintiff]."  258 F.3d 197, 209 (3d Cir. 2001).

Similarly here, Nationwide cannot argue that Wilkinson's policy is not, at least, "at

play" since, if we hold in the Chiaos' favor, it will no doubt claim a credit for the

$15,000 paid to the Defendants by Progressive.[5]  <u>Id.</u>

### C.   Interpretation of Disputed Insurance Contracts

When interpreting an insurance contract, we are to be guided by two main

_____

[5] We also note <u>Federal Kemper Ins. Co. v. Wales</u>, in which the Superior Court held that an injured employee could not seek coverage under her uninsured motorist policy when the liable co-employee (and her insurance policy) were immune from suit.  633 A.2d 1212 (Pa. Super. Ct. 1993).  The court explained, "As with underinsurance situations, the inability to recover does not convert the insured tortfeasor into an uninsured motorist."  <u>Id.</u>  at 1214. Therefore, two policies were in play in <u>Wales</u> insofar as the court held that the insured could not proceed as if the co-employee's insurance policy did not exist.  We find this reasoning applicable to the case <u>sub judice</u>.

principles of interpretation.  <u>Riley</u>, 352 F.3d at 807.  The first is that "a clear and unambiguous contract provision must be given its plain meaning."  <u>Id.</u> (<u>citing</u> <u>Burstein v. Prudential Prop. & Cas. Ins. Co.,</u> 809 A.2d 204, 206 (Pa. 2002).  The second, is that "contract provisions will not be enforced if to do so would be contrary to a clearly expressed public policy."  <u>Id.</u>

### 1.    Plain Meaning of the UIM Policy

We will, as we must, look first at the plain meaning of Nationwide's contract with the Chiaos.  The UIM Policy the Defendants purchased from the Plaintiff states, in relevant part:

> COVERAGE AGREEMENT
> YOU AND A RELATIVE
> We will pay compensatory damages, including derivative claims, **which are due by law to you** or a relative from owner or driver of an underinsured motor vehicle because of bodily injury suffered by you or a relative.  Damages must result from an accident arising out of the: (1) ownership; (2) maintenance; or (3) use of the underinsured motor vehicle.

( Endorsement 2358 Underinsured Motorists Coverage; Rec. Doc. 13 Ex A at 1) (emphasis added).  The parties dispute the meaning of "due by law" as it applies to the circumstances before us.  Nationwide argues that under various provisions of the WCA, the Chiaos would not be entitled to recover under the Policy because they were legally unable to recover payment directly from Wilkinson.  We must determine whether the Chiaos' inability to recover directly from Wilkinson means

10

that their claims are not "due by law," and thus that they are precluded from recovering under the UIM Policy issued by Nationwide.

First, Nationwide presents us with no precedent by which we can interpret the "due by law" language in the UIM Policy.  In fact, the language of the MVFRL states that underinsured motorist coverage applies when parties are "legally entitled to recover" from the owner of an underinsured vehicle.  Nationwide sees no difference between "legally entitled to recover" in the MVFRL and "due by law" in the UIM Policy.  While "legally entitled to recover" has developed a specific meaning under the MVFRL, we are presented with no evidence that "due by law" is anything other than legal boilerplate used by Nationwide in its insurance policies.[6]  As discussed in more detail below, we will not apply such vague language to limit the available coverage to the Plaintiffs in the light of the policies behind the MVFRL.

Second and notably, the circumstance at issue is not contemplated within the UIM Policy's eight enumerated coverage exclusions.  The UIM Policy states that:

> This coverage does not apply to:
> 1.       Use of any motor vehicle by an insured to carry persons or

_____

[6] A Westlaw search of cases shows that the only time the phrase "due by law" has arisen in insurance cases in Pennsylvania, is as it relates to policies sold by Nationwide.  An examination of these cases reveals that the phrase has not had attributed to it any particular legal significance.  See, e.g., Nationwide Mut. Ins. Co. v. Straitwell, 323 F.Supp.2d 654, 655 (W.D. Pa. 2004); Nationwide Mut. Ins. Co. v. Schmidt, 307 F.Supp.2d 674, 675 (W.D. Pa. 2004).

property for a fee.  Motor vehicles used in shared-expense car pools are not considered as carrying persons for a fee.

2.  Use of any motor vehicle by an insured without the owner's permission.

3.  Punitive or exemplary damages.

4.  Directly or indirectly benefit any workers' compensation or disability benefits carrier, or any person or organization qualifying as a "self-insurer" under a workers' compensation, disability benefits, or similar law.

5.  Bodily injury suffered while occupying or struck by a motor vehicle owned by you or a relative, but not insured for auto liability coverage under this policy

6.  Bodily injury suffered while occupying a motor vehicle owned by you or a relative but not insured for Underinsured Motorists coverage under this policy; nor to bodily injury from being hit by any such motor vehicle.

7.  Noneconomic loss of any insured who has elected "Limited Tort" in accordance with the Pennsylvania Motor Vehicle Financial Responsibility Law

8.  Bodily injury of any insured if the insured settles, without our written consent, with a liable party.

Id. at 2.[7]  Nationwide contends that the enumerated exceptions in the UIM Policy cannot possibly comprehend every conceivable occurrence in which coverage would not comply.  However, it has presented us with no evidence that the UIM Policy's drafters were forced to curtail this list for fear that it would become overly long and otherwise burdensome.  In fact, counsel for Nationwide was unable to inform the Court of any other exclusions not on this list in which coverage would

_____

[7] Plaintiff's argument that it would be too unwieldy to include an exclusion for the issue before us is weakened by the presence of another exclusion that pertains to workers' compensation (#4).  We have little doubt that if Nationwide had truly contemplated excluding the coverage in question, it could have adapted this exclusion to fit these circumstances.

not be available to an insured, save for the bar to coverage which it argues here.

## 2.    The Policy and Clearly Established Public Policy

Because the UIM Policy does not expressly address the issue before us, we must now turn to an examination of the public policy underlying the interplay of the WCA and the MVFRL.  At the outset of this analysis, we note that the MVFRL was amended in 1993 by what is known as Act 44.  Despite Nationwide's claim to the contrary, Pennsylvania courts have consistently held that Act 44 does not preclude the right of insureds to seek payment from both workers' compensation and automobile insurance policies.  See Gardner v. Erie Ins. Co., 722 A.2d 1041, 1044 (Pa. 1999).[8]

---

[8] Act 44 repealed certain portions of the MVFRL, in particular sections 1735 and 1737 that involve UIM insurance.  Section 1735 provided that "[UIM] coverage shall not be made subject to an exclusion or reduction in amount because of any workers' compensation benefits payable as the result of the same injury."  Id. at § 1735 (repealed).  Section 1737 stated that "notwithstanding the Workmen's Compensation Act, no employee who is otherwise eligible shall be precluded from recovery of uninsured or underinsured motorist benefits from an employer's motor vehicle policy under this chapter or the [Uninsured Motorist Act]."

On two occasions, the Pennsylvania Supreme Court has explained that the repeal of these sections by Act 44 did not effect a sea change in either MVFRL or the WCA as it pertains to dual recovery (i.e. recovering both workers' compensation and underinsured motorist benefits for the same incident).  As the Court explained in Gardner:

As Section 1735 is not viewed as the source of the dual recovery, its repeal cannot be seen as an evisceration. With regard to the repeal of Section 1737, that provision plainly reflected only the authorization of claims against an employer's motor vehicle insurance policy--it did not authorize, address or otherwise pertain to claims against a co-employee's insurer. Thus, the repeal of that provision likewise cannot evidence an intent on the part of  the General Assembly to disallow claims against a co-employee's insurer.

As we find that the UIM Policy is not clear, we move to the second step in

interpreting an insurance contract–public policy.  Although important, we are not

to be swayed by vague references to public policy, but rather "[p]ublic policy is to

be ascertained by reference to the laws and legal precedents and not from general

considerations of supposed public interest."  <u>Eichelman v. Nationwide Ins. Co.</u>,

711 A.2d 1006, 1009 (Pa. 1998).

---

<u>Gardner</u>, 722 A.2d at 1044-45; <u>see</u> <u>also</u> <u>Dujcai v. Dennis</u>, 656 A.2d 102, 106 (Pa. 1995)
("Section 1735's purpose is to limit insurance companies when they write insurance policies with
respect to using workers' compensation benefits as a set-off, *not to determine whether an
insured has any claim to workers' compensation benefits and uninsured or underinsured
motorist benefits.*"(citing <u>Hackenberg v. Southeastern Pa. Transp. Auth.</u>, 586 A.2d 879, 885 (Pa.
1991)(emphasis in original))).
     Our Third Circuit Court of Appeals has further explained Act 44.  <u>See</u> <u>DiBartolo</u>, 131
F.3d at 343(holding that an employee covered by workers' compensation could also recover
under an employer's underinsured motorist policy).  In <u>DiBartolo</u>, the Third Circuit explained
the purpose of Act 44:

> In the previous arrangement, a workers' compensation carrier had no right to
> subrogate against an employee's claim and the employee could not recover from
> the uninsured motorist carrier any amounts payable under workers' compensation.
> In the new arrangement, the employee's recovery from the underinsured motorist
> carrier is not to be reduced by the amount of any workers' compensation benefits
> payable, but the workers' compensation is given the right of subrogation for any
> benefits paid to the employee under workers's compensation.

<u>Id.</u> at 348-49.  Despite the right of subrogation, Act 44, as previously noted, did not forbid the
collection by an employee of underinsured motorist insurance.  As the court went on to explain,
"The collection by the employee of the uninsured motorist benefits ... merely creates a fund
against which the workers' compensation carrier can exert a subrogation lien for amounts paid
the employee for the already-recompensated injury."  <u>Id.</u> at 349 (citing <u>Gardner</u>, 691 A.2d at
465).  Therefore, the purpose of Act 44 was not to preclude dual recovery, but rather merely
prevented a double recovery, which Nationwide does not contend that Chiao is attempting here.
As the <u>DiBartolo</u> court concluded on this issue: "To end the recovery of both types of benefits,
the legislature would have to take clearer action than the silent repeal of inapplicable sections."
<u>Id.</u> at 350.

At the outset of this portion of our analysis, we note that "contract provisions [that] are not in accord with public policy, and are not advantageous to the insured are particularly subject to a finding of invalidity." Cosenza, 258 F.3d at 207 (quoting Kmonk-Sullivan v. State Farm Mut. Ins. Co., 746 A.2d 1118, 1121 (Pa. Super. Ct. 1999), aff'd 788 A.2d 955 (Pa. 2001)).  We now proceed to examine the relevant public policies under both the WCA and the MVFRL.

### a.      Public Policy and the MVFRL

The MVFRL contains no explicit mention of legislative intent, its purpose or public policy.  Cosenza, 258 F.3d at 208 (citing Marroquin v. Mutual Benefit Ins. Co., 591 A.2d 290, 293 (Pa. 1991)).  Nonetheless, courts in Pennsylvania have agreed that the MVFRL is a remedial statute which is consistently construed in favor of "indemnifying victims of accidents for harm they suffer on Pennsylvania highways."  Id. (internal citations omitted).

As it pertains to underinsured motorist insurance, "Pennsylvania courts are unanimous that the legislative intent underlying the MVFRL was to establish a liberal compensatory scheme of underinsured motorist protection."  Id. (citing Kmonk-Sulllivan, 746 A.2d at 1123; Marroquin, 591 A.2d at 293).  The purpose of underinsured motorist insurance is to protect "an insured from a negligent driver of another vehicle who causes injury to the insured, **but through no fault of the**

15

**insured**, lacks adequate insurance coverage to compensate the insured for his or her injuries." Id. (citing Eichelman, 711 A.2d at 1008)(emphasis added).  Because underinsured motorist insurance is optional in Pennsylvania, "courts have been especially attentive to the fact that UIM coverage is purchased 'to protect oneself from other drivers whose liability insurance purchasing decisions are beyond one's control.'" Id. (citing Eichelman, 711 A.2d at 1008).  Clearly, the Chiaos, who purchased the optional coverage, have not been adequately compensated following the incident due to circumstances beyond their control.

Despite these clear statements about underinsured motorist insurance, Nationwide contends that the actual policy evinced by the General Assembly behind the MVFRL is cost-containment.  In support thereof, it cites to Donnelly v. Bauer, which explained that "the repeal of the No-Fault Motor Vehicle Insurance Act, 40 [Pa. Const. Stat.] § 1009.101, and the simultaneous enactment of the MVFRL, reflected a legislative concern for the spiralling [sic] consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways." 720 A.2d 447, 452 (Pa. 1998)(internal quotations omitted).  Nationwide also cites to Caron v. Reliance Ins. Co., an opinion authored by then-Superior Court Judge Berle Schiller (now a judge on the United States District Court for the Eastern District of Pennsylvania), in which

Judge Schiller stated that "one of the major considerations that prompted the

passage of the MVFRL [was] the rapidly escalating cost of automobile insurance."

703 A.2d 63, 69 (Pa. Super. Ct. 1997)(citing Jeffrey v. Erie Ins. Exchange, 621

A.2d 635 (Pa. Super. Ct. 1993)(en banc)).

We do not disagree with Nationwide that the General Assembly adopted the

MVFRL, in part, to control the escalating costs of automobile insurance.  However,

we do not agree that this is a paramount consideration in our resolution of the

instant case.  First, Nationwide fails to show how a ruling in the Defendants' favor

would result in a significant increase in the cost of insurance.  Notably, Nationwide

has not presented testimony, affidavits, expert reports, or any other form of

tangible evidence by which we could find that insurance costs would, in fact,

increase.  Second, insofar as there is a cost to insurers for providing coverage in

this situation, we believe that it is already accounted for in the additional premium

paid by consumers for the optional UIM coverage.

Third, a ruling in Nationwide's favor could have an effect opposite to mere

cost containment and actually create a windfall for insurance carriers.  The

Pennsylvania Supreme Court, in Selected Risks Ins. Co. v. Thompson, explained

that the availability of collateral sources of payment, such as a workers'

compensation award that precluded payment of otherwise due insurance benefits

would result in a windfall for insurance carriers:

> The rationale of these courts is varied but certain common themes
> emerge: first, uninsured motorist coverage is paid for by a separate
> premium, and to give the uninsured motorist carrier a set-off based on
> the fortuitous existence of a collateral source would result in a
> windfall to the carrier; second, uninsured motorist coverage is
> mandated by statute and any variations from that statutory mandate
> should come from the legislature; third, workmen's compensation only
> covers a fraction of what tort damages would cover, (e.g. workmen's
> compensation does not provide 100% of wage loss coverage, nor pain
> and suffering, nor other consequential damages) and a
> dollar-for-dollar set-off does not recognize this reality; and fourth,
> **there is no public policy against an individual purchasing
> additional uninsured motorist coverage to protect himself and his
> family against the shortfall which could result from a dependency
> on workmen's compensation benefits**.

552 A.2d 1382, 1388 (Pa. 1989)(emphasis added).  The Chiaos purchased this

extra insurance to cover precisely the circumstance which arose here, that is, to

protect themselves when the coverage of another motorist was grossly insufficient

to compensate them for any injuries Sharon Chiao sustained.

Fourth, the courts have also paid little attention to whether an insurer had a

right of subrogation against an immune tortfeasor.  In Kmonk-Sullivan, the court

found irrelevant an insurers inability to subrogate against a tortfeasor who was an

immune government actor.  746 A.2d at 1125.  Only when a plaintiff "took some

action that destroyed the insurers' subrogation rights, such as settling with the

tortfeasor" was the lack of subrogation relevant.  Id.  Here, Wilkinson has taken no

action to destroy Nationwide's right to subrogation.  Rather, she is simply immune under Pennsylvania law.  This immunity is not relevant to a determination of whether Nationwide is liable here.  See, e.g., Boyle v. State Farm Auto Ins. Co., 456 A.2d 156, 162 (Pa. Super. Ct. 1983)(holding that an insurers inability to subrogate against a tortfeasor due to an elapsed statute of limitations did not alter the insurers' obligation to provide coverage).   We therefore find that while an important consideration in certain cases, the Commonwealth's policy of cost-containment is not relevant in the determination of whether an insured, injured by a co-employee, can claim underinsured motorist insurance while also receiving workers' compensation.

Regardless of cost-containment policies, we note that the Pennsylvania Supreme Court has found that there is "a correlation between premiums paid by the insured and the coverage [that] the claimant should reasonably expect to receive." Id.  (citing Eichelman, 711 A.2d at 1010)(other internal citations omitted)).  Most relevant to the inquiry in the case sub judice, the Supreme Court has also said that, "[a]llowing insurers to evade payment of UIM benefits ...., where the insured has paid a premium to procure UIM coverage, would be against public policy." Id. (quoting Kmonk-Sullivan, 746 A.2d at 1124, 1126)).  At oral argument, it became clear to the Court that coverage for Sharon Chiao's injuries sustained on December

8, 1998 is exactly the type of coverage the Plaintiffs expected to receive from their purchase of the UIM Policy.   We believe that is commonsensical for purchasers of optional UIM insurance to expect to be covered in the situation before the Court, absent a clear exclusion within the UIM Policy which would prevent activation of the coverage.

Finally, we note that our determination is consistent with the guide that in "close or doubtful cases" we are to find that the MFVRL intends to cover the underinsured motorist.  <u>Kmonk-Sullivan</u>, 746 A.2d at 1123.

### b.    Public Policy under the WCA

There are also several relevant public policy considerations related to the WCA that we must examine.  As the Pennsylvania Supreme Court succinctly explained in <u>Sporio v. Workmen's Compensation Appeal Bd. (Songer Const.)</u>:

> The [Workmen's Compensation] Act is remedial in nature and its purpose is to benefit the workers of this Commonwealth.  The Act is to be **liberally construed to effectuate its humanitarian objectives**. In addition, borderline interpretations of the Act are to be construed in the injured party's favor.

717 A.2d 525, 528 (Pa. 1998)(<u>citing</u> <u>Harper & Collins v. Workmen's Compensation Appeal Bd. (Brown)</u>, 672 A.2d 1319, 1321 (Pa. 1996))(emphasis added); <u>see</u> <u>also</u> <u>Gardner</u>, 722 A.2d at 1047 (applying the <u>Harper & Collins</u> WCA principles to an underinsured motorist case).

These general precepts are clearly reflected in the specific policies pertaining to the co-employee immunity and employer exclusion provisions.  The courts have explained that the purpose of the exclusivity provision is to allow workers to "obtain ... more efficient and expeditious statutory remedy of [workers' compensation] to the exclusion of a suit against his employer.  This does not mean that he has given up the right to seek redress from an unrelated third party."  Boris v. Liberty Mut. Ins. Co., 515 A.2d 21, 24 (Pa. Super. Ct. 1996).

With the public policy concerns attending both the MVFRL and the WCA in mind, we can now apply them to the case sub judice.  See Paylor, 640 A.2d at 1240 ("the enforceability of an exclusion [to insurance coverage] is dependent upon the factual circumstances presented in each case").

## D.    Application of MVFRL and WCA Public Policies to the UIM Policy

Although many courts have determined that a simultaneous recovery of workers' compensation and UIM insurance is possible, we have located only three cases which have in any way addressed the precise issue before us.  Specifically, two state court cases have discussed this issue, while one federal court addressed this issue in the pre-Act 44 context.

In the first state case, Love v. Nationwide Mutual Ins. Co., a county Court of Common Pleas held that "section 205 of the Workmen's Compensation Act

21

prevents [a] plaintiff from recovering uninsured motorist benefits under the at fault co-employee's insurance policy." 42 Pa. D. & C. 4th 394, 397 (Cambria Cty. Feb. 3, 1999).  This one-page opinion relies solely on decisions by appellate courts in North Dakota and Oregon and fails to address any of the clear policy reasons as previously noted that support Pennsylvania's insurance and workers' compensation statutes.  See id. (citing Cormier v. Nat'l Farmers Union Property & Casualty Co., 445 N.W.2d 644 (N.D. 1989) and Cope v. West American Ins. Co., 785 P.2d 1050 (Or. 1990)).[9]  As we are neither bound by the decision in Love nor persuaded by its limited reasoning, we will not adopt its holding because we predict that the Pennsylvania Supreme Court would engage in a more thorough analysis as it did in its most analogous case, Gardner. 722 A.2d at 1041.[10]

---

[9] The common law applied by the court in Cormier v. Nat'l Farmers Union Prop. & Casualty Co. indicates North Dakota's workers' compensation law has evolved quite differently from Pennsylvania's.  As that court explained, "we have been quite zealous in protecting the integrity of our workers compensation statutory scheme of exclusivity in the face of numerous challenges."  445 N.W.2d at 648.  As previously noted, Pennsylvania has been significantly less zealous in protecting the exclusivity of workers' compensation instead has expressed more concern with "humanitarian objectives."  Sporio, 717 A.2d at 528 (internal citations omitted).

Similarly, we find that Love's citation to Cope v. West American Ins. Co. is misguided, as the Oregon Supreme Court was tasked with resolving an entirely different question than the one we face here.  In Cope, the court was asked to determine whether a co-employee's negligence in the parking lot of the employer was covered under workers' compensation.  785 P.2d at 235.  Here, neither Nationwide nor the Chiaos contest that workers' compensation applies to the December 1998 accident.

[10] As Judge Schiller explained in Holland v. GEICO General Ins. Co.:

One jurist has found co-employee immunity bars an injured employee from collecting U[I]M benefits where the co-employee is at fault.  See Love, [42 Pa. D.

The second state court to discuss this issue was the Pennsylvania Supreme

Court via dicta in <u>Gardner</u>.  <u>Id.</u>  In <u>Gardner</u>, the plaintiff, Lorren Gardner, was

injured in a 1994 hit-and-run accident while driving a coworker's vehicle.  He had

a UIM policy with the defendant, Erie Insurance Company, which refused to pay

his claim.  The Court held:

> that an employee receiving workers' compensation benefits for
> injuries sustained in an automobile accident involving a co-
> employee's vehicle and arising out of **wrongful third-party conduct**
> is not precluded by the [Workmen's Compensation] Act from seeking
> underinsured motorist benefits from the co-employee's insurance
> carrier.

<u>Id.</u> at 1048 (emphasis added).  Thus, in <u>Gardner</u>, the tort was committed by an

anonymous third party, while in the instant case, the tort was committed by the

underinsured co-employee.  Lest we simply adapt this holding to the case at bar,

we note that the following footnote was set forth by the <u>Gardner</u> court:

> The question whether the recovery of underinsured motorist benefits
> should be permitted where the claim arises out of the negligence of
> the co-employee **is not before us**.  We note, however, that many
> jurisdictions have found that the tort immunity of a co-employee
> means that the injured employee is not 'legally entitled to recover'
> from the co-employee and therefore, as a contractual matter, **may not**

---

& C. 4th at 394].  However, the opinion is based on an incomplete quote of the
<u>Gardner</u> court dicta and non-controlling case law from other jurisdictions.
Besides its review of <u>Gardner</u>, the court did non analyze Pennsylvania precedent
regarding the meaning and policies of Pennsylvania's MVFRL and W[CA].

2001 WL 1818099(E.D. Pa. Dec. 5., 2001)(Schiller, J.).

**recover pursuant to an underinsured motorist benefits policy**.

Id. (internal citations omitted)(emphasis added).  In essence, Nationwide submits that we should cease our inquiry at the point of this footnote, and accordingly requests that we apply what is obviously dicta as if it were the holding of the Pennsylvania Supreme Court, while disregarding the rest of the Gardner opinion. We decline to do so, and rather will apply the more extensive and carefully reasoned logic that the Gardner Court itself used to reach its previously cited holding as it pertains to the intersection of workers' compensation and underinsured motorist insurance.  See DiBartolo, 131 F.3d at 348 n.9 ("a federal court should be circumspect in surrendering its own judgment concerning what the state law is on account of dicta.")(internal citations omitted); see also Abraham v. Raso, 183 F.3d 279 (3d Cir. 1999)(in analyzing an underinsured motorist case, the court disregarded dicta it believed to be "ill-conceived, poorly supported, and [that did] not accurately reflect the position of the ... Supreme Court").[11]

Gardner reiterates that the purpose of UIM insurance is to "protect an 'insured ... from the risk that a negligent driver of another vehicle will cause injury ... and will have inadequate coverage to compensate for the injuries caused by his

---

[11] See McKenna v. Ortho Pharm. Corp., 622 F.2d 657, 662 n.2 (3d Cir. 1980)(providing no rigid hierarchy that requires a federal court attempting to predict state law to rigidly enforce the Pennsylvania Supreme Court's dicta in the face of better-reasoned subsequent decisions of both state appellate and other federal courts).

negligence." <u>Nationwide Mut. Ins. Co. v. Riley</u>, 352 F.3d 804, 806-07 (3d Cir. 2003)(quoting <u>Paylor v. Hartford Ins. Co.</u>, 640 A.2d 1234, 1235-36 (Pa. 1994)(other internal citations omitted)).  Allowing the Chiaos to recover UIM benefits in the instant case necessarily means that they will be more adequately compensated for the injuries caused by the Wilkinson accident.

Finally, we must address an analogous unpublished opinion from our colleague Judge Schiller, which recently addressed the convergence of underinsured motorist insurance and workers' compensation.  <u>See Holland v. GEICO General Ins. Co.</u>, 2001 WL 1818099  (E.D. Pa. Dec. 5., 2001)(Schiller, J.).  In <u>Holland</u>, Judge Schiller held that the plaintiff, injured by her co-employee, could recover underinsured motorist benefits despite the ability to also recover workers' compensation benefits.  Although factually similar to the instant case, the accident in <u>Holland</u> occurred *prior* to Act 44's enactment in 1993.  Nonetheless, Judge Schiller applied several of the aforestated public policies to the interplay between workers' compensation and the MVFRL as we do now.  These policies militate in favor of the uncompensated Chiaos.

First and as previously noted, Judge Schiller focused on the "liberal compensatory scheme" intended by the MVFRL.  <u>Id.</u> at *4-5.  He then reviewed the plethora of state court decisions in which the exclusivity provision of the WCA

25

was found not to prohibit recovery of both underinsured motorist insurance and

workers' compensation.  Id.

Second and in accordance with the determination in Holland, we find no

evidence that the WCA either expressly prohibits, or that its public policy leads us

to interpret that it prohibits,  recovery by an insured against her insurer in this

situation.  As Judge Schiller explained, there is simply no "reason to extend the

immunity protecting co-employees–recognized in Apple[v. Reichert, 278 A.2d 482

(Pa. 1971)]– to an injured individual's personal U[I]M insurance carrier.  Neither

the plain terms of the Workers' Compensation Act nor the policies behind it

support [the insurer's] interpretation."  Id. at *7.  Additionally, a Pennsylvania

Superior Court has elsewhere noted that the exclusivity provision is:

> a realization that the employee cannot "have his cake and eat it, too";
> he obtains the more efficient and expeditious statutory remedy [of
> workers' compensation] to the exclusion of a suit against his
> employer. This does not mean he has given up the right to seek
> redress from an unrelated third party.

Boris v. Liberty Mut. Ins. Co., 515 A.2d 21, 24 (Pa. Super. Ct. 1996).  Insofar as

workers' compensation is concerned, we find Nationwide to be an "unrelated third

party" which was not intended to be protected by the WCA.  Id.  Nationwide is not

at all affected by the policies that encourage speedy repayment to injured

employees by their employers.  Rather, Nationwide sold the Chiaos the UIM

Policy so that they would be covered in the event that a tortfeasor in an automobile

accident lacked sufficient insurance to compensate them for their injuries.

See Holland, 2001 WL 1818099 at * 6 ("insurance companies may not cloak

themselves in the employee's immunity under the Workmen's Compensation

Act")(citing Warner v. Continental / CNA Ins. Co., 688 A.2d 177, 183 (Pa. Super.

Ct. 1996); see also Heckendorn v. Consolidated Rail Corp., 465 A.2d 609 (Pa.

1983)(holding that there is no role for the employer in an action by an employee

against a third party, making workers' compensation policies all but irrelevant).[12]

Third, just as Nationwide cannot find protection under the WCA, we

similarly find that there is none available under the MVFRL.  As previously noted,

the MVFRL instructs that we construe insurance policies in favor of the insured.

We can find no similar policy that militates in favor of protecting an insurer under

the circumstances of this case.

In the final step of our analysis, we must go one step further than Holland,

and predict what the Pennsylvania Supreme Court would do in a post-Act 44

circumstance, since as noted Holland arose before the effective date of the Act.

Judge Schiller explained that:

---

[12] In Holland, Judge Schiller engages in an extensive analysis of lower Pennsylvania
courts' decisions regarding insurers and employee immunity.

> This case is unusual in that it is predicated upon the MVFRL in 1991
> when both sections 1735 and 1737 were in force. ... This court has not
> been called upon to decide how the Supreme Court would decide rule
> in a similar situation post-repeal of 1735 and 1737.  I have balanced
> the applicable policies at play in 1991, and although a close question,
> I construe the term 'legally entitled to recover' in favor of the insured.

Id. at *9 (citing Cosenza, 258 F.3d at 208).[13]  As previously, noted, Act 44 did not

evince a change in the courts' interpretation of whether dual recovery is possible,

rather it merely altered subrogation rights of workers' compensation and

automobile insurance carriers.  To restate the Third Circuit's language in

DiBartolo:

> Understood in this broader context, the repeal of Section 1735 - like
> the repeal of Section 1737 - did not affect the ability of employees to
> recover both workers' compensation and uninsured motorist benefits.
> Indeed, the repeal of Section 1735 permitted the injured employee to
> recover more from these sources, although the workers' compensation
> carrier may ultimately be the beneficiary - by the use of its
> subrogation lien - of any double recovery.

DiBartolo, 131 F.3d at 348; see also Gardner, 722 A.2d at 1047 ("the ability of

employees to obtain dual recovery of workers' compensation and uninsured

motorist benefits was judicially recognized and independent of Sections 1735 and

1737.").  Since the relevant case law clearly indicates that the General Assembly

---

[13] At oral argument, counsel for Nationwide, after much prodding by us, finally conceded
that she believed quite simply that Judge Schiller had reached the wrong conclusion in Holland.
We disagree, and in fact found Judge Schiller's well-reasoned and cogent analysis to be quite
helpful in our resolution of this case.

did not intend to alter an employees' right to underinsured motorist and workers'
compensation benefits, and since we adopt the reasoning of <u>Holland</u> in pre-Act 44
cases, we must rule in the Chiaos' favor.

The relevant precedent from the Pennsylvania courts overwhelmingly
indicates to us that the Pennsylvania Supreme Court would determine that the
policy behind underinsured motorist insurance, namely that UIM insurance is
purchased to protect "individuals injured by a tortfeasor with inadequate insurance
coverage," requires insurers to compensate their customers when injured by an
underinsured co-employee.  <u>Kmonk-Sullivan</u>, 746 A.2d at 1123.  For these reasons,
we will grant Defendants' Motion for Summary Judgment as we hold that Plaintiff
must satisfy its obligation under the UIM Policy.


**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.   Plaintiff Nationwide Insurance Company's Motion for Summary

     Judgment (Rec. Doc. 10) is DENIED.

2.   Defendants Sharon and Charles P. Chiaos' Motion for Summary

     Judgment (Rec. Doc. 13) is GRANTED.

3.   Defendants Sharon and Charles P. Chiao shall be permitted to receive

     underinsured motorist benefits pursuant to their motor vehicle

insurance contract with the Plaintiff Nationwide Insurance Company

for the injuries resulting from the December 8, 1998 motor vehicle

accident involving Janet Wilkinson and Defendant Sharon Chiao.

4.     The Clerk is directed to close the file on this case.


                         s/ John E. Jones III
                         John E. Jones III
                         United States District Judge